56 P.3d 1099

**STATE of Arizona, Appellee,**

v.

**Michael Brennan MOORE, Appellant.**

**No. 1 CA–CR 01–0909 RT.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 12, 2002.

---

Janet Napolitano, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Michael Brennan Moore ("Defendant") appeals from the trial court's judgment of guilt for two counts of aggravated driving while under the influence of intoxicating liquor ("DUI"). For the reasons set forth below, we reverse Defendant's convictions and sentence and remand the case to the trial court for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On March 10, 1999, Defendant was arrested for DUI and later charged with two counts of aggravated DUI, class 4 felonies. The State alleged that, at the time of the

offenses, Defendant's driver's license was suspended.

¶ 3 Defendant pled not guilty and a trial ensued. At trial, Defendant admitted that he had previously been arrested for DUI in 1998, and that, as a result, his driver's license had been suspended. However, he further testified that, approximately one month after the 1998 arrest, he appeared in justice court in Casa Grande on the DUI matter and met with Judge Bain in the hallway outside the courtroom.[1] Defendant claimed that during the private meeting, Judge Bain agreed to issue a temporary driving permit to Defendant and effectively void the prior notice of suspension. Defendant further indicated that he thought his driver's license would automatically be reinstated once the temporary driving permit expired. Therefore, the crux of Defendant's defense was that on March 10, 1999, the date of the current offense, he believed his driver's license was valid.[2]

¶ 4 After Defendant's testimony, the State requested the trial court's permission for Judge Bain to testify via telephone as a rebuttal witness. The State explained that, due to Judge Bain's busy trial schedule, the judge would be unable to testify in person that day. Defendant objected to the telephonic testimony, stating that he had a right to confront Judge Bain in person. The trial court disagreed with Defendant and granted the State's request. The trial court reasoned that Judge Bain's busy trial schedule made it difficult for him to appear in person, that Judge Bain's in-person testimony was not critical because his truthfulness was not at issue, and that the trial could not be continued to accommodate Judge Bain's schedule.

¶ 5 Judge Bain then testified by telephone. He stated that his standard practice in addressing defendants on DUI matters is to read from a prepared script. He further testified that he had never met with any defendant in the hallway to discuss a pending case and that he has no independent recollection of meeting with Defendant.

¶ 6 The jury ultimately found Defendant guilty as charged. On appeal, Defendant claims that Judge Bain's telephonic testimony infringed on his confrontation rights.

## DISCUSSION

■ ¶ 7 The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that in all criminal prosecutions an accused has the right to be "confronted with the witnesses against him."[3] The United States Supreme Court has interpreted the clause to "guarantee[ ] the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Face-to-face, in-court testimony serves several purposes: (1) it "ensures the reliability of the evidence by allowing the trier of fact to observe the demeanor, nervousness, expressions, and other body language of the witness"; (2) it "impresses upon the witness the seriousness of the matter and ensures that statements are given under oath"; and (3) it "helps assure the identity of the witness, that the witness is not being coached or influenced during testimony, and that the witness is not improperly referring to documents." *United States v. Hamilton*, 107 F.3d 499, 503 (7th Cir.1997).

■ ¶ 8 The Confrontation Clause's face-to-face confrontation requirement, however, is not absolute. *United States v. Medjuck*, 156 F.3d 916, 919 (9th Cir.1998). "The Supreme Court has recognized an exception to a defendant's confrontation rights 'where denial of such confrontation is necessary to further an important public policy and ...

---

1. Defendant's testimony was corroborated by a witness who testified that she accompanied Defendant to justice court and saw Defendant speaking with Judge Bain outside the courtroom, although she did not hear the content of their discussion.

2. At trial, the State was required to prove that Defendant drove a motor vehicle under the influence of alcohol while his license was suspended

and that he knew or should have known of the suspension. *See State v. Rivera*, 177 Ariz. 476, 479, 868 P.2d 1059, 1062 (App.1994).

3. The Confrontation Clause of the United States Constitution was made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

the reliability of the testimony is otherwise assured.' " *Id.* at 920 (quoting *Maryland v. Craig,* 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). Whether telephonic testimony in a criminal trial violates a defendant's right to confrontation under the Sixth Amendment is an issue of first impression in this state.[4]

¶ 9 Other courts have addressed this issue. In *United States v. Jacobs,* 97 F.3d 275, 281 (8th Cir.1996), the government's witness was hospitalized while being cross-examined in court by the defendant. Despite the defendant's objection, the district court ruled that the witness could continue to be cross-examined by telephone from her hospital room and the jury could hear her testimony through speakers in the courtroom. *Id.* On appeal, the Eighth Circuit reversed, holding that:

> [T]he district court erred when it substituted cross-examination via telephone for in-person cross-examination in open court without identifying the important state interests and hearing evidence to determine the specific necessities of this case that justified abridgement of [defendant's] constitutional right to confront his accuser face to face.

*Id.* at 283.

¶ 10 In *Topping v. People,* 793 P.2d 1168, 1169 (Colo.1990), a physician testified from another state by telephone in a sexual assault case. The physician did not testify in person because the trip to do so would be "highly inconvenient." *Id.* The defendant challenged the telephonic testimony on the ground that it violated his right to confront the witness face-to-face at trial and the Colorado Supreme Court agreed. *Id.* at 1172. The court stated:

> Neither the People's desire to minimize witness inconvenience nor the trial court's interest in the application of electronic communication technology to the judicial process, however laudable such concerns might be, constitutes a state policy of sufficient substance to justify abridgment of [defendant's] sixth amendment right to confront [the witness] face-to-face when she testified against him.

*Id.*

¶ 11 We adopt the reasoning of *Jacobs and Topping* and hold that a defendant's confrontation rights are violated when telephonic testimony is admitted in a criminal trial and the State has not demonstrated a compelling reason or need for the telephonic testimony to substitute for in-person testimony.[5] Telephonic testimony thwarts the purposes of the Confrontation Clause in that the jury cannot "observe the demeanor, nervousness, expressions, and other body language of the witness." *See Hamilton,* 107 F.3d at 503. Thus, a witness testifying over the telephone may refer to a scripted version of the events instead of having to look the defendant and jurors in the face while recounting the relevant events. Moreover, telephonic testimony seriously impinges on a defendant's ability to "confront and cross-examine his accusers face-to-face." *State v. Robinson,* 153 Ariz. 191, 203, 735 P.2d 801, 813 (1987).

¶ 12 Here, the State failed to show any compelling reason or need to receive Judge Bain's testimony by telephone. The State merely told the trial court that Judge Bain had a busy trial schedule that morning. It did not ask Judge Bain to appear later that day or the next day, or alternatively, to find a substitute judge to handle his cases while he appeared in this matter. Although the trial court noted that ordering Judge Bain to personally appear would be inconvenient for the judge, the mere inconvenience of a witness is an insufficient reason to infringe

---

4. We note that the Ninth Circuit has recognized a violation of the Confrontation Clause when deposition testimony has been admitted at trial in place of the witness's live testimony and when the witness has not shown that he is "unavailable" to testify. *See Christian v. Rhode,* 41 F.3d 461, 467 (9th Cir.1994) (holding that the admission of depositions held outside the United States violated a defendant's confrontation rights when the State failed to "make any attempt whatsoever to secure [the defendant's] presence.").

5. Our opinion is limited to criminal trials. We do not address either the standards or desirability of telephonic testimony in non-criminal proceedings; nor do we consider other options such as video teleconferencing.

on a defendant's confrontation rights. *See Topping*, 793 P.2d at 1171.

¶ 13 Furthermore, the trial court stated that Judge Bain need not testify in person since his truthfulness was not at issue. However, Judge Bain's testimony contradicted Defendant's testimony on a central issue in the case: whether a private meeting between Judge Bain and Defendant took place in which Judge Bain agreed to issue a temporary driving permit to Defendant. Thus, the case hinged on whether the jury believed Judge Bain or Defendant. It was therefore essential for the jury to observe Judge Bain's demeanor while testifying. Also, upon seeing Defendant in court, Judge Bain may have been able to recall the specifics of any meeting with Defendant, if such a meeting in fact took place.

¶ 14 Finally, although the trial court concluded that it could not continue the trial for one or two days to accommodate Judge Bain's schedule, it did not provide any reasons for that conclusion. Because there was no showing of necessity to further an important public policy, and because the reliability of the testimony could not otherwise be assured, we find that Defendant's confrontation rights were violated.

¶ 15 Although a violation of the Confrontation Clause may be harmless error, *State v. Riley*, 196 Ariz. 40, 44, ¶ 9, 992 P.2d 1135, 1139 (App.1999), we cannot conclude that the error here was harmless. "Error is harmless if we can say beyond a reasonable doubt that the error did not affect the ver-dict." *State v. Dunlap*, 187 Ariz. 441, 456, 930 P.2d 518, 533 (App.1996). "The inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).

¶ 16 Here, Judge Bain was the State's primary witness against Defendant. The essence of his testimony was important to the outcome of the case; it undermined Defendant's claim that he believed his license to be valid at the time of the offense due to his private encounter with Judge Bain. We therefore hold that the error was reversible error.

## CONCLUSION

¶ 17 For the foregoing reasons, Defendant's convictions are reversed and this matter is remanded to the trial court for a new trial.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and PATRICK IRVINE, Judge.